**Jeremy D. Sosna**
*Admitted pro hac vice*
**Peter K. Doely**
*Admitted pro hac vice*
**Maslon LLP**
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-4140
Telephone:    (612) 672-8200
Facsimile:      (612) 672-8397
Email:    jeremy.sosna@maslon.com
               peter.doely@maslon.com

**Cynthia A. Ricketts**
State Bar No. 012668
**Andrew C. Stanley**
State Bar. No. 029789
**Sacks, Ricketts & Case LLP**
2800 N. Central Ave., Suite 1230
Phoenix, AZ 85004
Telephone:    (602) 385-2270
Facsimile:      (602) 385-3371
Email:    cricketts@srclaw.com
               astanley@srclaw.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Ethelbah,<br><br>         Plaintiff,<br><br>   vs.<br><br>Kona Grill International, Inc., an Arizona Corporation, and Kona Sushi, Inc., an Arizona corporation,<br><br>         Defendants. | Case No.: 17-cv-03419-DLR<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>**(Oral Argument Requested)** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Kona Grill International, Inc. and Kona Sushi, Inc., hereby move the Court for complete summary judgment in their favor on all of Plaintiff Lisa Ethelbah's claims.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Lisa Ethelbah ("Ethelbah") was employed as Defendants Kona Grill International, Inc.'s, and Kona Sushi, Inc.'s (collectively referred to herein as "Kona Grill") Human Resources Manager, the Company's chief human resources officer, during her 18 month tenure before she abruptly resigned in November of 2016. In that role, Ethelbah had sole responsibility for all human resources matters for Kona Grill, a publicly-traded corporation with over 4,000 employees in 23 states and Puerto Rico. Notwithstanding the broad authority she exercised in that role to independently manage the company's vast human resources needs, Ethelbah now claims that Kona Grill misclassified her as a salaried-exempt employee and that she is entitled to substantial overtime pay pursuant to the Fair Labor Standards Act (the "FLSA") for certain hours she allegedly worked during her employment.

Summary judgment is virtually demanded in this case because Ethelbah easily qualifies for the administrative exemption to the overtime requirements of the FLSA as a matter of law. Ethelbah's self-serving, unsupported, and ultimately ridiculous claim that she was nothing more than a highly-paid human resources clerk who gathered and processed payroll data is belied by the mountain of undisputed evidence to the contrary. The record is replete with undisputed evidence—including Ethelbah's testimony and hundreds of Ethelbah's own emails, memorandums, and other documents Ethelbah prepared during her employment—showing that Ethelbah exercised the high level discretion and independent judgment that is customary for the chief human resources

officer of a publicly-traded corporation with employees in 23 states and Puerto Rico. Among other things, Ethelbah routinely drafted policies and procedures; dispensed employment law advice (in some cases working independently with Kona Grill's outside lawyers to obtain legal advice); conducted important investigations; led significant human resources projects; managed Kona Grill's benefits plans and programs, including by making determinations regarding employee eligibility; initiated and conducted audits of Kona Grill's HR practices and policies to determine compliance with, for example, the FLSA and federal immigration law; managed legal claims by employees against Kona Grill; and provided counseling to management regarding employee performance management, disciplinary actions and terminations. Even giving Ethelbah *every* benefit of the doubt and viewing the facts in a light most favorable to her, as the Court must, Ethelbah simply can never prevail on her claims that she was misclassified as administratively exempt from the overtime requirements of the FLSA as a matter of law. Accordingly, Kona Grill respectfully requests that the Court enter summary judgment and dismiss Ethelbah's Complaint in its entirety and with prejudice.

## II.     SUMMARY OF UNDISPUTED MATERIAL FACTS

Defendants Kona Grill International, Inc. and Kona Sushi, Inc. ("Defendants") are part of the family of companies owned by Kona Grill, Inc. (collectively referred to herein as "Kona Grill"). Kona Grill is a publicly-traded company that, through its various subsidiaries, owns and operates over 40 restaurants throughout the United States and Puerto Rico.

Plaintiff Lisa Ethelbah ("Ethelbah") was employed by Kona Grill as its Human Resources Manager from July 6, 2015, until her resignation on or about November 28, 2016. Defendants' Separate Statement of Facts ("SOF") ¶ 1. As Human Resources Manager, Ethelbah was the head of human resources at Kona Grill and "[m]anage[d] the day to day functions of the HR department and [was] hands on to carry out HR disciplines to support over 4,400 employees, a management team of 100+ as well as the Operations, Payroll, Development and the Executive team in 45 locations across 20 states." SOF ¶ 2. Ethelbah's annualized salary was initially $65,000 and was increased to $75,000 in September 2015. SOF ¶ 3. Ethelbah reported to Jennifer Elkins ("Elkins"), the Vice President of Operations (a member of the Kona Grill executive team), during her employment with Kona Grill. SOF ¶ 4. Ethelbah voluntarily resigned from Kona Grill in November 2016. SOF ¶ 1.

In her role as the head of human resources for Kona Grill, it is undisputed that Ethelbah had a broad array of significant responsibilities supporting Kona Grill's human resources needs. The evidence shows that Ethelbah functioned with very little oversight and was allowed (and expected) by Kona Grill to exercise a great deal of discretion in managing virtually every aspect of the human resources function for Kona Grill. Among other things, Ethelbah (similar to the head of human resources at almost every company) was responsible for the following:

<u>HR Advice and Counseling To Management.</u>  Ethelbah routinely, and without oversight, provided advice and counseling to Kona Grill management regarding a wide array of sensitive employee matters and gave recommendations as to how to best resolve.

SOF ¶ 8. Ethelbah directed restaurant managers to consult her directly on such matters, as did Christi Hing, Kona Grill's CFO ("Hing"). SOF ¶ 9. For example, without seeking Elkins' or Hing's permission or input, Ethelbah answered questions and provided advice about legal requirements and Kona Grill's policies concerning (a) compensation, benefits, sick leave, and maternity leave, SOF ¶ 10; (b) performance management and discipline, SOF ¶ 11; (c) Kona Grill's fraternization policy, SOF ¶ 12; (d) employee medical issues, SOF ¶ 13; (e) maternity leave policies, SOF ¶ 14; and (f) confidentiality, SOF ¶ 15. In addition, Ethelbah independently assisted management in drafting and revising formal employee discipline records. SOF ¶ 16. Ethelbah was also involved in discussions with management concerning terminating Kona Grill employees, advised when employees may be terminated, and acted on behalf of Kona Grill to terminate employees. SOF ¶ 17.

<u>Compliance Audits.</u> Ethelbah conducted extensive audits of Kona Grill's HR documents, policies, and practices to evaluate legal compliance. SOF ¶ 18. For example, on her own initiative, Ethelbah (a) conducted an extensive I-9 audit of Kona Grill's compliance with federal immigration laws, identified problems, and recommended corrective actions, SOF ¶ 19; (b) audited Kona Grill's compliance with the Fair Labor Standards Act, again upon her own initiative, by reviewing exemption classifications for certain Kona Grill positions, SOF ¶ 20; (c) audited restaurants' compliance with required employment law posters, SOF ¶ 21; and (d) audited employment benefits premium payments, identifying approximately $60,000 of issues that required correction, SOF ¶ 22.

Investigations.  Ethelbah was responsible for conducting internal investigations regarding employment matters, such as employee complaints of discrimination and sexual harassment.  SOF ¶ 23.  Ethelbah decided how to conduct the investigations, the scope of the investigations, who to interview, what to ask each witness, and which documents she might need to review.  SOF ¶ 24.  After completing an investigation, Ethelbah would determine what other steps needed to be taken and recommended how to resolve the matter.  SOF ¶ 25.

Ethelbah described her process for making recommendations after her investigations as follows:

> A: Well, you look at the facts of the case, those that look to be the facts, and then determine whether there have been any risks as far as employment laws, any policy violations, anything that would create any risk and provide that information as a finding and then make any recommendations as to what we could try to do if there's any finding that we could try to resolve, make recommendations as to how we can do that to mitigate risk, however that is.
>
> Q: So in other words, mitigate risk.  Your recommendations are based on the facts as supplied through whatever the requirements are from a legal perspective and the recommendations based on what we can do to fix this moving forward.
>
> A: Yes.

SOF ¶ 26.  In some cases, Ethelbah prepared formal Confidential Investigation Reports with findings, conclusions, and recommendations.  SOF ¶ 27.

Training Programs. Ethelbah recommended, developed, and conducted training sessions for Kona Grill managers and employees.  SOF ¶ 28. For instance, Ethelbah (a) facilitated multistate training (20 states, including CA and Puerto Rico) for managers/employees on HR policies and procedures, SOF ¶ 29; (b) recommended,

6

researched, created, and provided anti-harassment training for Kona Grill employees in California and Florida, SOF ¶ 30; (c) developed and provided I-9 training for managers to ensure compliance with immigration laws, SOF ¶ 31; (d) conducted phone trainings for managers concerning HR topics such as best practices for documentation of employee issues, SOF ¶ 32; (e) conducted fraternization training, SOF ¶ 33; and (f) developed and conducted policy and procedure training for new employees in California, SOF ¶ 34.

<u>Drafting Policies and Procedures.</u>  One of Ethelbah's core responsibilities was recommending, drafting and implementing HR policies and procedures applicable to employees on an enterprise-wide or state-by-state basis.  SOF ¶ 35.  For example, Ethelbah was responsible for updating and maintaining multiple and state specific employee handbooks and suggested best practices for remaining in compliance with applicable laws.  SOF ¶ 36.  Ethelbah also recommended and established procedures to ensure best practices and compliance with specific laws and regulatory requirements, including employment eligibility based on immigration status, retention of I-9s, FLSA classification requirements, deduction of uniform charges, changes in employment relationships, short-term disability, the Americans with Disabilities Act, and workers compensation claims.  SOF ¶ 37.

When Kona Grill opened its first California location in 2016, Ethelbah drafted and revised the Kona Grill employee handbook to ensure compliance with California employment laws.  SOF ¶ 38.  Ethelbah identified, recommended, and worked directly with a California law firm to assist in the review of the employee handbook, with virtually no oversight by either Elkins or Hing.  SOF ¶ 39.  In fact, once Ethelbah had

completed her review of the employee handbook with California counsel, Elkins and Hing approved virtually all of the changes to the employee handbook that Ethelbah had recommended.  SOF ¶ 40.

<u>Led Implementation of New Benefits System</u>  When Kona Grill made the decision (upon Ethelbah's recommendation) to implement a new online employee onboarding and benefits election system, Ethelbah led the project to make sure implementation went smoothly.  SOF ¶ 41.  As part of this process, Ethelbah recommended the vendor for the new system, conducted weekly meetings with the new vendor regarding the implementation, and updated Kona Grill management regarding status.  SOF ¶ 42.

<u>Representing Kona Grill in Legal Proceedings/Matters.</u>  Ethelbah was responsible for managing and overseeing workers' compensation, general liability, and unemployment claims against Kona Grill, including investigating the claim, preparing Kona Grill's strategy for responding, and drafting responses, for example, to the EEOC, the Arizona Attorney General's Office, the U.S. Department of Labor, and the Industrial Commission of Arizona.  SOF ¶¶ 43-49.  Ethelbah communicated with outside counsel and state/federal agencies to effectively manage Kona Grill's legal risks associated with such claims.  SOF ¶¶ 39, 43-49  In addition, Ethelbah worked independently with lawyers in Texas to manage a workers' compensation lawsuit and was designated to testify as one of Kona Grill's representatives.  SOF ¶ 50.

<u>Administration of FMLA and Medical Leave Policies</u>.  Ethelbah administered Kona Grill's FMLA and medical leave policies by (a) communicating with the employee to obtain information/documentation, SOF ¶¶ 51-52; (b) determining employees'

eligibility for legally protected leave under the FMLA, SOF ¶ 53; (c) making decisions and communicating eligibility decisions that she made, SOF ¶ 54; (d) working with management regarding FMLA or other medical leaves, SOF ¶ 55; (e) and coordinating the employee's return to work at the conclusion of any leave. SOF ¶ 56.

Benefits Plan Administration. Ethelbah was responsible for administering Kona Grill's benefits programs, such as its short-term disability, medical, dental, vision, and life insurance benefits plan. SOF ¶ 57. Among other things, Ethelbah (a) evaluated employee benefit requests and determined eligibility, SOF ¶ 58; (b) developed and managed the annual open enrollment process during which employees made benefits selections, including by communicating with employees about the benefits, SOF ¶ 59; (c) managed the relationship with the benefits broker, participated in the decision to evaluate and select a new broker, and implemented the changes to benefits plans when Kona Grill switched brokers, SOF ¶ 60; (d) ensured compliance with reporting/recordkeeping obligations under the Affordable Care Act and applicable law, SOF ¶ 61; (e) developed and conducted deductions/compliance audits, SOF ¶ 62; and (f) "provide[ed] knowledgeable and confidential assistance to employees." SOF ¶ 63. Ethelbah also served as one of only five members of the Employee Retirement Savings Plan Committee (along with the CEO, CFO, Controller, and Director of Financial Reporting) that had oversight of Kona Grill's retirement programs,. SOF ¶ 64.

Provided Guidance Regarding Employment Laws. Ethelbah provided expert guidance to management regarding compliance with various employment laws, such as child labor laws, the FLSA, Title VII, the ADA, the FMLA, state workers' compensation

laws, and state wage and hours laws, among others.  SOF ¶ 65.  Ethelbah also provided advice concerning (a) how and when Kona Grill may legally search its employees, SOF ¶ 66; (b) legal requirements for paying terminated employees their final paycheck, SOF ¶ 67; (c) the recovery of overpayment of wages, SOF ¶ 68; (d) the legality of tip pooling, SOF ¶ 69; and (e) immigration laws.  SOF ¶ 70.  Ethelbah also dispensed advice regarding liability waivers and legal concerns relating to employees making deliveries.  SOF ¶ 71.  In some cases, Ethelbah independently consulted with outside legal counsel to obtain advice regarding such matters.  SOF ¶ 72.

<u>Ethelbah's Supervisors Accepted Ethelbah's Recommendations.</u>  Ethelbah conferred with Elkins or Hing only "a few times a week" concerning certain complex issues that arose.  SOF ¶ 73.  Ethelbah decided when to elevate issues.  SOF ¶ 74.  Elkins and Hing generally relied on Ethelbah's advice and recommendations because neither had a background in human resources.  SOF ¶ 75.  The record contains countless examples where Hing and/or Elkins accepted Ethelbah's recommendations with virtually no input, including with regard to (a) best documentation practices, SOF ¶ 76; (b) job descriptions, SOF ¶ 77; (c) unemployment compensation matters, SOF ¶ 78; (d) Ethelbah's proposed Short-Term Disability Policy, SOF ¶ 79; (e) Ethelbah's onboarding process, SOF ¶ 80;  (f) Ethelbah's recommended anti-harassment training, SOF ¶ 81; and, (f) Ethelbah's recommendations regarding vacation and relocation issues.  SOF ¶ 82.

<u>Recommended and Facilitated Hiring of HR Specialist.</u>  Further evidence of Kona Grill's desire to have Ethelbah focus on performing the significant and important HR functions outlined above is Kona Grill accepting Ethelbah's recommendation to hire a

Human Resources Specialist to assist her. Ethelbah prepared a job description for the position and provided wage data to Elkins and Hing. SOF ¶ 84. Ethelbah recommended that Kona Grill classify the new Human Resources Specialist position as non-exempt because it did not require the same level of qualifications as the HR Manager position that Ethelbah held, and Elkins and Hing agreed. SOF ¶ 85. Ethelbah independently reviewed resumes, narrowed the set of candidates, conducted phone interviews with five candidates, and then selected three candidates to bring in for interviews. SOF ¶ 86. After in-person interviews, Ethelbah recommended the hiring of Edward Dawahoya, and Elkins and Hing agreed. SOF ¶ 87. Ethelbah recommended that Dawahoya be paid approximately $45,000 per year, and Elkins and Hing agreed. SOF ¶ 88. After Dawahoya was hired, he reported to Ethelbah, and Ethelbah managed his schedule and determined how work would be allocated between them. SOF ¶ 89. In her email introducing Dawahoya, Ethelbah directed Kona Grill management to continue to contact her for employee relations issues (indicating that this was something that had occurred prior to Dawahoya's hiring) because "this is a management function and we want to maintain certain boundaries from non-management to management tasks." SOF ¶ 90.

## III. LEGAL ANALYSIS

### A. Legal Standard for Summary Judgment.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid dismissal of its case, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U. S. 574, 586-587 (1986). On summary judgment, all reasonable inferences are given and any disputed facts must be drawn in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986); *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

    **B.    Ethelbah Was Properly Classified As Exempt From The Overtime Requirements Of The FLSA Pursuant To The "Administrative Exemption."**

The FLSA generally requires employers to compensate employees who work more than 40 hours per week at one and one-half times the employee's regular rate of pay. 29 U.S.C. § 207(a)(1). The overtime pay requirements of the FLSA do *not* apply, however, to salaried employees who work in a "bona fide . . . administrative . . . capacity." 29 U.S.C. § 213(a)(1). An employee qualifies for the "administrative exemption" (and is therefore not eligible for overtime pay) if (1) the employee's job is directly related to the management and business operations of the employer; and (2) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §§ 541.200(a)(2)-(3).[1] As set forth below, Kona Grill can easily meet its burden of demonstrating that the elements of the administrative exemption are met and, accordingly, summary judgment against Ethelbah is warranted.

---

[1] DOL regulations also require that a bona fide administrative employee be compensated on a salaried basis of not less than $455 per week. 29 C.F.R. §§ 541.200(a)(1). There is no dispute in this case that Ethelbah fulfills this requirement. SOF ¶ 3.

12

### 1. Ethelbah's primary duty was the performance of non-manual work related to the management and business operations.

Ethelbah qualifies for the administrative exemption because her duties were directly related to the management and business operations of Kona Grill. 29 C.F.R. § 541.200(a). To meet this requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). The DOL regulations expressly state that work in areas such as personnel management, human resources, employee benefits, and legal and regulatory compliance constitutes work that is directly related to the management and general business operations of the employer. 29 C.F.R. § 541.201(b).

Here, the undisputed record demonstrates that Ethelbah meets this requirement. Ethelbah was Kona Grill's chief human resources employee, managed Kona Grill's human resources department (including by supervising Dawahoya), and her specific duties included those listed in § 541.201(b) noted above – most obviously personnel management, human resources, and employee benefits. Ethelbah cannot reasonably dispute that she performed work that was directly related to the management and general business operations of Kona Grill pursuant to Section 541.201(b). *See Viola v. Comprehensive Health Mgmt., Inc.*, 441 F. App'x 660, 662–63 (11th Cir. 2011) (*per curiam*) (employee who arguably performed four of the functions listed in § 541.201(b) was covered by the administrative exemption as a matter of law).

2. **<u>Ethelbah's Primary Duties Include the Exercise of Discretion and Independent Judgment With Respect to Matters of Significance.</u>**

Ethelbah was properly classified as salaried-exempt pursuant to the administrative exemption because her primary duties involved the exercise of discretion and independent judgment with respect to matters of significance. An employee exercises discretion and independent judgment when she makes a decision after comparing and evaluating all potential courses of conduct. 29 C.F.R. § 541.202(a). When determining whether an employee exercised "discretion and independent judgment" as to "matters of significance," the Court must consider the following factors:

> whether the employee has authority to <u>formulate, affect, interpret, or implement management policies or operating practices</u>; whether the <u>employee carries out major assignments in conducting the operations of the business</u>; <u>whether the employee performs work that affects business operations to a substantial degree</u>, even if the employee's assignments are related to operation of a particular segment of the business; <u>whether the employee has authority to commit the employer in matters that have significant financial impact</u>; <u>whether the employee has authority to waive or deviate from established policies and procedures without prior approval</u>; whether the employee has authority to negotiate and bind the company on significant matters; <u>whether the employee provides consultation or expert advice to management</u>; whether the employee is involved in planning long- or short-term business objectives; <u>whether the employee investigates and resolves matters of significance on behalf of management</u>; and <u>whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.</u>

29 C.F.R. § 541.202(b) (emphasis added).

The voluminous and undisputed record demonstrates that Ethelbah's primary duties as Human Resources Manager included the exercise of broad discretion or independent judgment with regard to a wide-variety of significant human resources matters. Plaintiff was solely responsible for making important human resources decisions

that affected Kona Grill's over 4,000 employees. Among other things, Ethelbah (a) created, implemented, and interpreted policies and procedures governing Kona Grill's employees (such as the California Employee Handbook); (b) independently investigated employee complaints and recommended resolutions; (c) made determinations about employee benefits (such as short-term disability); (d) audited human resources practices and made effective recommendations to ensure compliance with federal and state laws; (e) was the primary point of contact for management regarding HR matters; (f) regularly and without oversight served as the main advisor to management on how to handle employee matters (such as discrimination claims, wage/hour matters, and employee complaints); (g) provided information and guidance to Kona Grill management regarding compliance with labor and employment laws (such as the FLSA, Title VII, the ADA, and other federal and state laws); (h) developed and implemented management and employee training sessions; (i) guided performance management discussions with underperforming employees and made disciplinary recommendations (including terminations); (j) audited the Company's compliance with the FLSA and made recommendations regarding exemption classifications; and (k) served as Kona Grill's representative in legal proceedings and other legal matters. Ethelbah exercised discretion and independent judgment about such important and significant matters ***on a daily basis.*** These undisputed facts show that her duties fit squarely within the administrative exemption to the FLSA as a matter of law.

The DOL regulations further support Kona Grill's position. The DOL regulations expressly state that human resources managers who perform the very functions that

15

Ethelbah performed during her employment "generally meet the duties requirements for the administrative exemption." 29 C.F.R. § 541.203(e). Courts evaluating analogous positions have also determined that the administrative exemption applies. *See, e.g.*, *Farnham v. Riimic, LLC*, 2012 WL 5187851 (S.D. Fla. Oct. 19, 2012) (holding that Human Resources/Office Manager performing similar duties to Ethelbah qualified for the administrative exemption); *see also Morales v. Compass Grp., PLC*, No. CV 13-9231-JFW MANX, 2014 WL 5304913, at *8 (C.D. Cal. Oct. 16, 2014) (holding that human resources consultant that was responsible for training, focus groups, and wage and hour audits "easily meets the discretionary and independent judgment prong"); *Gonzales v. Barrett Bus. Servs., Inc.*, No. CV-05-0104-EFS, 2006 WL 1582380, at *20 (E.D. Wash. June 6, 2006) (holding that customer service representative was exempt because of her integral role in personnel management). In fact, other federal courts have found that the exemption applies to employees who exercised far less discretion or independence than Ethelbah, such as an internal staffing recruiter. *See Andrade v. Aerotek, Inc.*, 700 F. Supp. 2d 738, 747 (D. Md. 2010) (holding that staffing recruiter exercised the required discretion and independent judgment in recruiting employees, even though she did not have the authority to make the hiring decisions and was simply selecting candidates for consideration); *see also* U.S. Dep't of Labor Op. Letter, 2005 WL 3308616 (October 25, 2005) (duties delegated to a staffing manager were more akin to the human resource manager than a non-exempt personnel clerk). Kona Grill is entitled to summary judgment because the breadth and significance of the human resources duties Ethelbah

performed prove the requisite amount of discretion and independent judgment to qualify her for the administrative exemption as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, Defendants Kona Grill International, Inc. and Kona Sushi, Inc. respectfully request that the Court grant the Motion for Summary Judgment and dismiss Plaintiff Lisa Ethelbah's Complaint in its entirety and with prejudice.

Dated: June 14, 2018              Respectfully submitted,

**MASLON LLP**

By: *s/Jeremy D. Sosna*
    Jeremy D. Sosna (Admitted *pro hac vice*)
    Peter K. Doely (Admitted *pro hac vice*)

and

**SACKS, RICKETTS & CASE LLP**
Cynthia A. Ricketts
Andrew C. Stanley

**ATTORNEYS FOR DEFENDANTS KONA GRILL INTERNATIONAL, INC. AND KONA SUSHI, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

Preston K Flood
Sean Christopher Davis
Trey A.R. Dayes, III
Phillips Dayes Law Group PC
3101 N. Central Ave., Suite 1500
Phoenix, AZ 85012
602-288-1610
Fax: 602-288-1664
Email:
prestonf@phillipsdayeslaw.com
SeanD@phillipsdayeslaw.com
treyd@phillipsdayeslaw.com

*s/Jeremy D. Sosna*